Walter L. Wagner
PO Box 271233
Salt Lake City, UT 84127
808-443-6344
retlawdad@hotmail.com

FILED
U.S. DISTRICT COURT

2016 JAN 22 P 3:22

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

--ooOoo--

| | |
|---|---|
| Walter L. Wagner, ) | Case: 2:16cv00055<br>Assigned To : Parrish, Jill N.<br>Assign. Date : 1/22/2016<br>Description: Wagner v. Cruz |
| Plaintiff ) | |
| ) | |
| vs. ) | COMPLAINT FOR DECLARATORY |
| ) | RELIEF |
| Rafael Edward (Ted) Cruz, ) | |
| ) | (Non Jury) |
| Defendant ) | |
| ) | (Speedy Hearing Requested) |

1

## Complaint for Declaratory Relief

Comes now plaintiff Walter L. Wagner and seeks Declaratory Relief as follows:

I

## Jurisdiction

1. Plaintiff Walter L. Wagner (plaintiff) is a resident and citizen of the State of Utah, registered to vote in State and Federal elections in Utah.

2. Defendant Rafael Cruz (defendant) is a resident and citizen of the State of Texas.

3. Jurisdiction is proper in this Court due to the diversity of citizenship.

II

## Factual Allegations

4. Plaintiff is informed and believes as follows:

    a. Defendant was born in Calgary, Alberta, Canada on December 22, 1970.

b.    Defendant was raised in Calgary, Alberta, Canada from birth through and until the age of four as a Canadian citizen, whereupon he relocated to Texas.

c.    Defendant's father was a citizen of Cuba and a resident of Canada seeking permanent Canadian residence at the time of defendant's birth.

d.    Defendant's mother was a citizen of the U.S.A. and a resident of Canada seeking permanent Canadian residence at the time of defendant's birth.

e.    One or more members of Defendant's household proclaimed to Canadian government agents, after defendant's birth, that they (the Cruz family) were Canadians, and both parents were listed on Canadian voter registration rolls as eligible Canadian voters.

f.    Defendant could claim citizenship from Cuba, Canada, and the U.S.A. at the time of his birth.

g.  Defendant renounced his Canadian citizenship in 2014, seeking to retain solely his U.S.A. citizenship.

h.  Defendant is seeking a U.S. government employment position (President) that constitutionally requires a status of being "natural born" which requires either birth in the U.S.A. with intentions to reside in the U.S.A. by the parents if they are non-citizens, or birth outside the U.S.A. or its territory with both parents as U.S.A. citizens; or birth outside the U.S.A. or its territory with one parent a U.S.A. citizen and intentions to soon after birth reside in the U.S.A. and not having intentions to have residency or citizenship in a foreign (non-U.S.A.) country.

III

Request for Relief and Declaratory Judgment

5.  Plaintiff has a vested interest in insuring that all candidates for the position of President are legally qualified, including being "natural born" citizens as required by the U.S. Constitution.

6. Defendant Cruz has declared himself to be a candidate for the position of President, and is seeking to vie with other, qualified candidates, in the caucuses and elections of Utah. Having an unqualified candidate compete with the numerous qualified candidates potentially skews the results of those events, and potentially places him in a position of unlawfully serving as President should someone else not challenge his candidacy based on his lack of "natural born" status. Accordingly, plaintiff has standing to bring this suit.

7. Plaintiff seeks a declaratory judgment that defendant is not a "natural born" citizen within the meaning of the U.S. Constitution, but is instead a foreign-born citizen who was made a potential citizen at birth by way of his mother's citizenship, with the ability to choose a citizenship status other than that of U.S.A. due to his foreign birth and sole U.S.A. citizen parent.

8. Plaintiff attaches hereto his *Points and Authorities in Support* of his request for a Declaratory Judgment, specifically the scholarly article

by Mary Brigid McManamon, a constitutional law professor at Widener University, Delaware Law School; the case of *Minor v. Happersett*, 88 U.S. 162, which discussed the issue; and the statutory authority allowing for issuance of a declaratory judgment.

9. Plaintiff seeks a speedy hearing to properly resolve this issue in a timely manner.

## Points and Authorities in Support

Plaintiff respectfully submits the following points and authorities in support of his request for declaratory judgment:

10. The *Federal Rules of Civil Procedure, Rule 57*, governs the procedure for obtaining a declaratory judgment under *28 U.S.C. §2201*. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

11. The Advisory Committee Notes thereto provide as follows:

6

> *"The fact that a declaratory judgment may be granted 'whether or not further relief is or could be prayed' indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will 'terminate the controversy' giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion, as provided for in California (Code Civ.Proc. (Deering, 1937) §1062a), Michigan (3 Comp.Laws (1929) §13904), and Kentucky (Codes (Carroll, 1932) Civ.Pract. §639a–3).*
>
> *The 'controversy' must necessarily be 'of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.'* Ashwander v. Tennessee Valley Authority, *297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. The petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited. A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings.*
>
> *When declaratory relief will not be effective in settling the controversy, the court may decline to grant it. But the fact that another remedy would be equally effective affords no ground for declining declaratory relief. The demand for*

*relief shall state with precision the declaratory judgment desired, to which may be joined a demand for coercive relief, cumulatively or in the alternative; but when coercive relief only is sought but is deemed ungrantable or inappropriate, the court may* sua sponte, *if it serves a useful purpose, grant instead a declaration of rights."*

12. Under *28 U.S. Code § 2201 - Creation of remedy,* paragraph (a) it reads:

*"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, <u>any court of the United States</u>, upon the filing of an appropriate pleading, <u>may declare the rights and other legal relations of any interested party seeking such declaration</u>, whether or not further relief is or could be sought. <u>Any such declaration shall have the force and effect of a final judgment</u> or decree and shall be reviewable as such."*

(<u>underlining</u> added for emphasis)

13. Plaintiff seeks declaratory relief and a declaratory judgment to the effect that defendant is not a "natural born" American citizen due to his birth and early childhood in Canada from only a single U.S. citizen parent (mother). The founding fathers included a different standard of citizenship to serve as the Commander in Chief of the U.S. armed services and U.S. President, inserting the additional requirement into the U.S. Constitution that such U.S. citizen seeking such office must also be "natural born" to serve in the office of President, which office defendant Cruz seeks. Common usage has referred to "natural born" as being born on U.S. soil. Congress deemed Senator McCain to be "natural born" due to his birth on U.S. soil (Panama Canal Zone) to two U.S. citizen parents.

14. This requirement of being a "natural born" citizen was apparently inserted to insure that foreign-born persons, being raised under other allegiance, should not be able to have the uppermost command of the U.S. Military. This has been expounded upon in a scholarly article by

9

Mary Brigid McManamon, a constitutional law professor at Widener University's Delaware Law School, which reads:

> *"Donald Trump is actually right about something: Sen. Ted Cruz (R-Tex.) is not a natural-born citizen and therefore is not eligible to be president or vice president of the United States.*
>
> *The Constitution provides that "No person except a natural born citizen ... shall be eligible to the office of President." The concept of "natural born" comes from the common law, and it is that law the Supreme Court has said we must turn to for the concept's definition. On this subject, the common law is clear and unambiguous. The 18th-century English jurist William Blackstone, the preeminent authority on it, declared natural-born citizens are "such as are born within the dominions of the crown of England," while aliens are "such as are born out of it." The key to this division is the assumption of allegiance to one's country of birth. The Americans who drafted the Constitution adopted this principle for the United States. James Madison, known as the "father of the Constitution," stated, "It is an established maxim that birth is a criterion of allegiance. [And] place is the most certain criterion; it is what applies in the United States."*
>
> *Cruz is, of course, a U.S. citizen. As he was born in Canada, he is not natural born. His mother, however, is an American, and Congress has provided by statute for the naturalization of children born abroad to citizens. Because of the senator's parentage, he did not have to follow the lengthy naturalization process that aliens without American parents must undergo. Instead, Cruz was naturalized at*

*birth. This provision has not always been available. For example, there were several decades in the 19th century when children of Americans born abroad were not given automatic naturalization.*

*Article I of the Constitution grants Congress the power to naturalize an alien. That is, Congress may remove an alien's legal disabilities, such as not being allowed to vote. But Article II of the Constitution expressly adopts the legal status of the natural-born citizen and requires that a president possess that status. However we feel about allowing naturalized immigrants to reach for the stars, the Constitution must be amended before one of them can attain the office of president. Congress simply does not have the power to convert someone born outside the United States into a natural-born citizen.*

*Let me be clear: I am not a so-called birther. I am a legal historian. President Obama is without question eligible for the office he serves. The distinction between the president and Cruz is simple: The president was born within the United States, and the senator was born outside of it. That is a distinction with a difference.*

*In this election cycle, numerous pundits have declared that Cruz is eligible to be president. They rely on a supposed consensus among legal experts. This notion appears to emanate largely from a recent comment in the <u>Harvard Law Review Forum</u> by former solicitors general Neal Katyal and Paul Clement. In trying to put the question of who is a natural-born citizen to rest, however, the authors misunderstand, misapply and ignore the relevant law.*

11

*First, although Katyal and Clement correctly declare that the Supreme Court has recognized that the common law is useful to explain constitutional terms, they ignore that law. Instead, they rely on three radical 18th-century British statutes. While it is understandable for a layperson to make such a mistake, it is unforgivable for two lawyers of such experience to equate the common law with statutory law. The common law was unequivocal: Natural-born subjects had to be born in English territory. The then-new statutes were a revolutionary departure from that law.*

*Second, the authors appropriately ask the question whether the Constitution includes the common-law definition or the statutory approach. But they fail to examine any U.S. sources for the answer. Instead, Katyal and Clement refer to the brand-new British statutes as part of a "longstanding tradition" and conclude that the framers followed that law because they "would have been intimately familiar with these statutes." But when one <u>reviews all the relevant American writings of the early period</u>, including congressional debates, well-respected treatises and Supreme Court precedent, it becomes clear that the common-law definition was accepted in the United States, not the newfangled British statutory approach.*

*Third, Katyal and Clement put much weight on the first U.S. naturalization statute, enacted in 1790. Because it contains the phrase "natural born," they infer that such citizens must include children born abroad to American parents. The first Congress, however, had no such intent. The debates on the matter reveal that the congressmen were aware that such children were not citizens and had to be naturalized; hence, Congress enacted a statute to provide for them.*

> *Moreover, that statute did not say the children were natural born, but only that they should "be considered as" such. Finally, as soon as Madison, then a member of Congress, was assigned to redraft the statute in 1795, he deleted the phrase "natural born," and it has never reappeared in a naturalization statute.*
>
> *When discussing the meaning of a constitutional term, it is important to go beyond secondary sources and look to the law itself. And on this issue, the law is clear: The framers of the Constitution required the president of the United States to be born in the United States."*

15. Case law is lacking on this issue directly. One older Supreme Court case touches on it tangentially, *Minor v. Happersett*, 88 U.S. 162 (1875), which discusses citizenship rights. Within its discourse it asserts that persons born on U.S. soil with two citizen parents are also citizens, essentially asserting a requirement for either two citizen parents, or birth on U.S. soil, and reads:

> *"It is sufficient for everything we have now to consider that all children born of citizen parents <u>within the jurisdiction</u> are themselves citizens."* and *"Some authorities go further and include as citizens children born <u>within the jurisdiction</u> without reference to the citizenship of their parents. As to this class there have been doubts, but never as to the first."*

(*underlining* added for emphasis)

16. Citizenship has since been extended to the second class referenced in that case in which there had been doubts, i.e. birth to parents in the U.S. without regard to citizenship status of the parents qualifies one for citizenship, and thus likewise "natural born" as also born on U.S. soil (with *"within the jurisdiction"* referring to U.S. territory).

17. One can imagine a scenario, for example, in which a person born with a single U.S. citizen parent in a far foreign land, being raised in that land for 17 years, then removing to the U.S.A and asserting U.S. citizenship. Under the meaning of "natural born" as detailed above, such individual would be able to assert their citizenship right (born of a single parent U.S. citizen), but would not be "natural born". It appears that such was the meaning and intent of the U.S. Constitution which has not been changed in that regard since its inception. Accordingly, the proper method for any such change in meaning is an amendment

thereto with State ratification as detailed in the Constitution for amending the Constitution.

18. WHEREFORE, it is respectfully requested that this Court conduct a speedy hearing on this matter, after service of the summons and complaint, and grant the requested Declaratory Judgment that defendant Cruz is not "natural born" within the meaning of the U.S. Constitution.

DATED:   January 21, 2016

_____
Walter L. Wagner