Walter L. Wagner
PO Box 271233
Salt Lake City, UT 84127
808-443-6344
retlawdad@hotmail.com

FILED
U.S. DISTRICT COURT

2016 FEB -5  ⊃ 1: 32

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

--ooOoo--

| | |
|---|---|
| Walter L. Wagner, | ) |
| | ) Civil No. 2:16cv00055 |
| Plaintiff | ) |
| | ) |
| vs. | ) **MEMORANDUM OF** |
| | ) **SUPPLEMENTAL POINTS AND** |
| Rafael Edward (Ted) Cruz, | ) **AUTHORITIES IN SUPPORT** |
| | ) |
| Defendant | ) (Hon. Jill N. Parrish, Judge) |
| | ) (Hon. Paul Warner, Mag. Judge) |

1

## MEMORANDUM OF SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT

1. The birthright law of the U.S. is *Jus Soli* (right of the soil)[1]. This natural born *Jus Soli* law applies to anyone born within the exclusive jurisdiction and allegiance of the U.S. and its territories. This is true regardless of the parents' legal or citizenship status in the U.S. jurisdiction at the child's birth, with exception for children born to diplomats, foreign enemies, and invaders, (those not subject to the exclusive jurisdiction or allegiance of the U.S.).

---

[1] *"Jus soli, meaning 'right of the soil', is the right of anyone born in the territory of a state to nationality or citizenship. As an unconditional basis for citizenship, it is the predominant rule in the Americas, but is rare elsewhere. Since the Twenty-seventh Amendment of the Constitution of Ireland was enacted in 2004, no European country grants citizenship based on unconditional jus soli. A study in 2010 found that only 30 of the world's 194 countries grant citizenship at birth to the children of undocumented foreign residents, although definitive information was not available from 19 countries. Almost all states in Europe, Asia, Africa, and Oceania grant citizenship at birth based upon the principle of jus sanguinis (right of blood), in which citizenship is inherited through parents not by birthplace, or a restricted version of jus soli in which citizenship by birthplace is automatic only for the children of certain immigrants."* https://en.wikipedia.org/wiki/Jus_soli]

2.  It is an absolute requirement to be born in the U.S. and subject to its jurisdiction and allegiance to be natural born under the U.S. Constitution. This is captured in the Article II, Section 1 and the 14th Amendment.

3.  Article II, Section 1 recognizes two categories of citizens eligible for President. Natural born citizens, and citizens present in the U.S. jurisdiction at the time of adoption of the Constitution. At that time of adoption, Congress couldn't have established any naturalization laws as there was no Constitutional authority to do so. The founders essentially were giving those present in the U.S. at the time of adoption an exemption ('grandfathered in') by granting them natural born status under the Constitution for the office. However, that unique inclusion of those citizens to be considered natural born for President had an 'expiration date', which would be their natural life span. As they are now all deceased, that second category no longer exists.

4.  As we know, the Constitution also uses the term "*citizen*" for eligibility for lesser offices. The framers of the Constitution certainly had vision and could see a time down the road when Congress would establish naturalization acts and there would be naturalized citizens. They certainly would not have wanted to exclude naturalized citizens from the political process or participation therein. Yet, at the same

time, they wanted to keep the highest office free from potential foreign influence and reserve it for those with exclusive natural jurisdiction and allegiance to the U.S. (both at the time of adoption of the Constitution, and later).

5. The 14th Amendment recognizes those born in the U.S. and subject to the jurisdiction thereof (natural born) under the Constitutional law, and those naturalized and subject to the jurisdiction thereof (not natural born) by enacted laws. So anyone born in the U.S. and subject to its exclusive jurisdiction and allegiance is automatically, by nature, and without operation of any enacted law, *natural born* under the Constitution. If a person is not born under those conditions, regardless of *Jus Sanguinis*[2] (right of the blood) they must be made citizens by enacted law, and thus are naturalized (not natural born).

---

[2] *"Jus sanguinis (Latin: right of blood) is a principle of nationality law by which citizenship is not determined by place of birth but by having one or both parents who are citizens of the state. Children at birth may automatically be citizens if their parents have state citizenship or national identities of ethnic, cultural or other origins. Citizenship can also apply to children whose parents belong to a diaspora and were not themselves citizens of the state conferring citizenship. This principle contrasts with jus soli (Latin: right of soil)."*

https://en.wikipedia.org/wiki/Jus_sanguinis

6. So, the simple test is: if a person becomes a citizen solely by enacted law, they are not a *natural born* citizen, but rather a naturalized citizen. If a person becomes a citizen by birth in the U.S. or its territories, they are *natural born*. This is true even if that naturalization is "automatic" under statute (Naturalization Act), requiring no further naturalization steps. A naturalized citizen can be required, depending on the given Naturalization Act in effect, to legal conditions to become naturalized, including being denied admission to or excluded/deported from the U.S. A natural born citizen can never be subject to such conditions, denationalized, or deported. (Extreme exceptions might be when a natural born citizen has a highly dangerous communicable disease and denied re-entry into the U.S. while coming from abroad for public safety reasons, under martial law due to war, national threat, etc.)

7. In the case of defendant Cruz, it is known he was not born in the U.S. or its territories and thus, at birth, not subject to the exclusive

jurisdiction or allegiance thereof. Therefore, he is not and can never be found a native or natural born citizen of the U.S.[3]

8. There is case law in which persons similarly situated to defendant Cruz, who were foreign born sons of "native/natural born" U.S. citizen mothers but born on foreign soil, and found not to be native/natural born.

9. In the 10th Circuit Court of Appeals, in the case of *Zimmer v. Acheson*, 191 F.2d. 209, (1951, 10th Circuit) discussed *infra*, the court specifically declared Zimmer "*not native born*" even though he had a U.S. citizen mother and a naturalized U.S. citizen father at birth in a foreign country (Germany, state of Bavaria). He was found to be a *naturalized citizen* (not natural born), but to have expatriated himself by oath to, and serving in the German Army, thereby allowing for loss of his naturalization citizenship. Likewise, the US Supreme Court has consistently taken the position that foreign-born children of US citizens who acquire their citizenship by means of Congressional enactments are considered by members of the Court to be "*naturalized citizens*".

10. Two U.S. Supreme Court cases in particular help to illustrate this point, *Montana v. Kennedy,* 366 U.S. 308 (1961) along with *Rogers v.*

---

[3] Canada is also a *Jus Solis* state, and by the same analysis, defendant Cruz is a <u>natural born Canadian</u>, <u>not</u> a natural born U.S. citizen.

*Bellei*, 401 U.S. 815 (1971). Those two Supreme Court cases along with the case of *Zimmer v. Acheson* demonstrate that statutory citizenship is in fact a form of "naturalized" citizenship.

11. In the case of *Montana v. Kennedy*, the facts of the case were that Mauro Montana was born in Italy in 1906 to a father who was an Italian citizen and a mother who was a native-born US citizen. His mother brought him to the United States the year following his birth, he was never naturalized, and he resided in the US until he was ordered deported as an alien. His case came before the Supreme Court in 1961, which held that Mauro Montana was not a US citizen.

12. By contrast, in the case of *Rogers v. Bellei*, the facts of the case were that Aldo Bellei was born in Italy in 1939 to a father who was an Italian citizen and a mother who was a native born US citizen. Further listed as a fact in the case opinion was that he *"acquired United States citizenship at his birth under Rev.Stat. § 1993, as amended by the Act of May 24, 1934, § 1, 48 Stat. 797, then in effect."* The issue before the Court was whether Bellei was subject to losing his citizenship because he hadn't fulfilled the statute's residency requirements, but the point is that the Court considered him to be a naturalized citizen at birth.

13. The only difference in circumstances between the two men, born 33 years apart, was that the amendment to the Rev.Stat. § 1993 that passed in 1934 allowed for citizenship to be conferred to children of US citizen mothers whereas previously it was only applicable to children of US citizen fathers.

14. The case of *Zimmer v. Acheson* can shed some degree of understanding here on the meaning of the *Rogers v. Bellei* case and its relationship to the nature of the citizenship of defendant Cruz. In the *Zimmer* case, Harry Ward Zimmer, who was born in Bavaria to a naturalized US citizen father, Werner Herman Zimmer, and a native-born US citizen mother (both parents U.S. citizens), was acknowledged by the court to have acquired his citizenship under Revised Statutes § 1993, the very same statute by which Aldo Bellei acquired his citizenship.

15. Chief Judge Phillips, writing the opinion of the Court said:

> *"If Werner Herman Zimmer, by virtue of his naturalization on October 30, 1896, was a citizen of the United States on August 9, 1905, the date of the birth of Harry Ward Zimmer, then the latter, at the time of his birth, became a citizen of the United States by virtue of the foregoing statute, **but his status as a citizen was that of a naturalized citizen and not a native-born citizen.**"* (**bold** added for emphasis)

16. In the words of the court in *Zimmer*,

> *"There are only two classes of citizens of the United States, **native-born citizens** and **naturalized citizens**; and a citizen who did not acquire that status* [native born or natural born] ***by birth in the United States** is a <u>naturalized citizen</u>."* (**bold** and <u>underlining</u> added for emphasis)

17. Returning to the *Bellei* case, Justice Blackmun, in delivering the majority opinion in the 1971 case of *Rogers v. Bellei* stated:

> *"But it* [the first sentence of the Fourteenth Amendment] *has not touched the acquisition of citizenship by being born abroad of American parents; and has left that subject to be regulated, as it had always been, by Congress, in the exercise of the power conferred by the Constitution to establish an uniform rule of naturalization."* [Citing Justice Gray's opinion in the case of *US v. Wong Kim Ark,* 169 U.S. 649 (1898)]

He points out that the citizenship of the plaintiff, Aldo Bellei was *"wholly statutory"* observing:

> *"The plaintiff's claim thus must center in the statutory power of Congress and in the appropriate exercise of that power within the restrictions of any pertinent constitutional provisions ... The Court has recognized the existence of this power. It has observed, "No alien has the slightest right to naturalization unless all statutory requirements are complied with."* [Citing Justice McReynolds' majority opinion in the 1917 case of *US v. Ginsberg,* 243 U.S. 472 (1917)]

...

18. The Court went so far as to point out that Bellei's citizenship rested purely on a statute that rested purely on Congress' power to "naturalize." In short, but for the generosity of Congress passing enactments conferring citizenship at birth upon children born abroad to US citizens, those children would be considered aliens.

19. Even those dissenting in the *Bellei* case were of a like opinion on the nature of Bellei's citizenship. After noting that *"Bellei became an American citizen under the terms of § 1993 of the Revised Statutes, as amended"*, Justice Black stated,

> *"Although those Americans who acquire their citizenship under <u>statutes conferring citizenship on the foreign-born children of citizens are not popularly thought of as naturalized citizens</u>, the use of the word "naturalize" in this way has a considerable constitutional history. Congress is empowered by the Constitution to "establish an uniform Rule of Naturalization," Art. I, 8. <u>Anyone acquiring citizenship solely under the exercise of this power is, constitutionally speaking, a naturalized citizen</u>."* (<u>underlining</u> added for emphasis)

20. He later continued in noting "*All means of obtaining American citizenship which are dependent upon a congressional enactment are forms of naturalization.*" In commenting on the majority opinion, Justice Black observed, *"The majority opinion appears at times to rely*

*on the argument that Bellei, while he concededly might have been a naturalized citizen, was not naturalized 'in the United States.'."* . . . So the principal dissenting opinion likewise thought Bellei was "naturalized".

21. And finally, Justice Brennan opines:

> *"Concededly, petitioner was a citizen at birth, <u>not by constitutional right</u>, but only through operation of a federal statute ... distinguishing among citizens whose naturalization was carried out within the physical bounds of the United States, and those, like Bellei, <u>who may be naturalized overseas ...</u>"* (<u>underlining</u> added for emphasis)

22. There was no difference of opinion amongst the members of the Court as to the mechanism by which Aldo Bellei acquired his citizenship. It was by Congress' power to establish rules of "Naturalization" and as such, the entire Court considered him a "naturalized" citizen. The dispute among the members pertained to whether his citizenship enjoyed 14th Amendment protections, but not whether or not he was naturalized.

23. That's also consistent with Justice Gray's opinion over 70 years earlier in the case of *US v Wong Kim Ark* when he stated:

> *"A person born out of the jurisdiction of the United States can only become a citizen by being naturalized, ... by authority of Congress, exercised ... by declaring certain classes of persons to be citizens, as in the enactments conferring citizenship upon foreign-born children of citizens ..."*

24. That statement clearly indicates that children of citizens who are born outside US Territory, who gain their citizenship by Congressional statute are naturalized. In other words, simply having citizen parents isn't enough to make one a natural born citizen.

25. As further evidence that Aldo Bellei was a *"naturalized citizen"*, please note that his citizenship was stripped from him for not complying with statutory residency requirements. In the 1949 case of *Klapprott v. United States*, 335 U.S. 601 (1949), Justice Black in delivering the judgment of the Court observed:

> *"To take away a man's citizenship deprives him of a right no less precious than life or liberty, indeed of one which today comprehends those rights and almost all others. . . .* **No such procedures could strip a natural-born citizen of his birthright or lay him open to such a penalty.**" (**bold** added for emphasis)

26. Klapprott was a naturalized citizen who stood to have his citizenship stripped from him, in essence for failure to answer a complaint that his original oath of allegiance was false. Justice Hugo

Black, addressing Kapprott's circumstances, states that a "natural-born citizen" does <u>not</u> face the danger of having his citizenship stripped from him.

27.   In the *Rogers v Bellei* case, Aldo Bellei, like defendant Cruz, was born outside of US territory. Aldo Bellei, like defendant Cruz, had a father who was <u>not</u> a US citizen. Aldo Bellei, like defendant Cruz, had a US citizen mother who provided a pathway to statutory US citizenship at birth (naturalization citizenship at birth). Aldo Bellei was considered by the entire Court to be a naturalized citizen. If Aldo Bellei was a naturalized citizen, then defendant Cruz must also be a naturalized citizen, not a natural born citizen.

28.   No amendment to the US Constitution has been ratified that has changed either the requirements for the Presidency listed in article II of the Constitution or changed the definition of the meaning of *"natural born citizen."* Therefore, what constitutes a *"natural born citizen"* today is the same thing that constituted a *"natural born citizen"* in 1788 when the Constitution was ratified.

29.   Justice Blackmun, in writing the opinion of the Court in the case of *Rogers v. Bellei* observed:

> *"The application of these respective statutes to a person in plaintiff Bellei's position produces the following results: ... Not until 1934 would that person have had any conceivable claim to United States citizenship. For more than a century and a half, no statute was of assistance. Maternal citizenship afforded no benefit. One may observe, too, that, if Mr. Bellei had been born in 1933, instead of in 1939, he would have no claim even today. Montana v. Kennedy, supra."*

30. As we've seen, defendant Cruz' citizenship was acquired by precisely the same mechanism as Aldo Bellei's citizenship. Defendant Cruz could never be a *"natural born citizen"*, but rather a *naturalized citizen*, obtaining naturalization citizenship by Congressional enactment, not by birth in the United States or its territories.

31. The additional requirement for attaining the highest office, beyond mere 'citizen' status as for all other offices, to require the Commander in Chief to be a "natural born" citizen was well discussed by the founding fathers.

32. We know from the historical record and from the way the Constitution is framed that the Founders relied heavily upon Emmerich de Vattel and his highly acclaimed treatise, *The Law of Nations or Principles of the Law of Nature (1758)*, as a crucial and fundamental guide in knowing what the law of nations was.

33. Alexander Hamilton was a key organizer of the movement to hold the Constitutional Convention that produced the Constitution. No one played a more important role than Hamilton in the adoption of the Constitution. Of all the Founders, he was the one most influenced by Vattel. In 1784, Hamilton, as the lawyer for the defense, arguing in the case of *Rutgers v. Waddington*, New York City Mayor's Court (1784), quoted prolifically from Vattel's *The Law of Nations*.

34. Vattel, in his legal treatise, *The Law of Nations or Principles of the Law of Nature,* in Book I, Chapter XIX, analyzed citizenship and related topics. The Founders knew that Vattel defined a "citizen" simply as any member of society. They also knew from reading Vattel that a "*natural born Citizen*" had a different standard from just "citizen," for he or she was a child born in the country to two citizen parents (Vattel, Section 212 in original French and English translation). That is also the definition of a "natural born Citizen," as recognized by numerous other U.S. Supreme Court and lower court decisions[4] and the framers of the Civil Rights Act of 1866, the 14th Amendment, the Naturalization Acts

---

[4] *The Venus*, 12 U.S. 253 (1814), *Shanks v. Dupont*, 28 U.S. 242 (1830), *Scott v. Sandford*, 60 U.S. 393 (1856), *Minor v. Happersett*, 88 U.S. 162 (1875) , *Ex parte Reynolds*, 20 F.Cas. 582 (C.C.W.D. Ark 1879), *United States v. Ward*, 42 F. 320 (1890); *Wong Kim Ark*, 169 U.S. 649 (1898), *Ludlam, Excutrix, & c., v. Ludlam*, 26 N.Y. 356 (1863)

of 1795, 1798, 1802, 1885, and our modern 8 U.S.C. Sec. 1401. [subsection 1401(g) pertains to Cruz' naturalization citizenship status]

35. It should be noted that during the Founding and throughout American history, there has always been a distinction between a general "citizen" on the one hand and a *"natural born citizen"* on the other. The treatise *Law of Nations* did not make any specific requirements for one to be a "citizen" of a nation, for such a person was basically just a member of the civil society. Before and after the revolution, the Founders considered anyone who resided in the colonies or States and who adhered to the revolutionary cause to be a "citizen," regardless of place of birth or condition of the parents. But the law of nations did provide for a strict definition of a *"natural born citizen,"* i.e., a child born in the country of citizen parents.

36. The Founders also adopted that stricter definition for an Article II "natural born Citizen" which applied <u>only</u> to one desiring to be President and Commander-in-Chief of the Military. The Founders were concerned about the Office of President being attacked from within and without with foreign influence infecting not only the voters but also the political leaders themselves. The Founders understood that citizenship and allegiance went together. The born-in-country-to-two-U.S.-citizen-parents formula was the best way for them to assure that

only a person with undivided allegiance and loyalty to the United States would be eligible to be President and Commander-in-Chief of the Military.  While the meaning of "*natural born*" might have expanded the definition of "natural born" to include those born in the U.S. where one or both parents are not citizens, there is no such possibility for persons born outside the U.S. or its territories who have early childhood allegiance to a foreign country, as is the case with defendant Cruz.  The courts have consistently asserted that persons born outside the U.S. or its territories who obtain citizenship are naturalized citizens, <u>not</u> natural born citizens.

37.   This distinction is of no little importance, having been addressed repeatedly by the courts in developing a very clear distinction between "natural born" (aka "native born") citizens and naturalized citizens.

38.   Whether this is a proper constitutional requirement, or whether the Founding Fathers made a mistake in how they drafted the U.S. Constitution in requiring a "natural born" status for President, is not for this Court to decide.  This Court is empowered to enforce existing law, not change law, and accordingly it is respectfully requested that this Court declare that defendant Cruz is a naturalized U.S. citizen, naturalized at birth by congressional enactment, not a "natural born" U.S. citizen within the meaning of the U.S. Constitution.

39. However, plaintiff also believes that the Founding Fathers did not make a mistake in requiring a "natural born" status to be the U.S. President.  Otherwise, anyone who's lived extensively in other countries, but obtained naturalization citizenship, could become President, something the Founding Fathers clearly did not wish, and to change that situation by granting defendant Cruz a 'pass' on this issue would set a terrible precedent for future presidential elections.  The requirement for natural born status to become Commander-in-Chief is a good one, not needing of change.

40. Accordingly, it is respectfully requested that this Court issue a declaratory judgment declaring that defendant Cruz' citizenship is a naturalization by statute citizenship, and not a natural born citizenship, and accordingly he is ineligible for the Presidential contests, absent a Constitutional Amendment to change that requirement.

DATED: February 4, 2016

_____

Walter L. Wagner